# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 26, 2012 Session

## CHRIS ERIC STRICKLAND v. PENNYE DANIELLE STRICKLAND

**Appeal from the Circuit Court for Putnam County**
**No. 08N0199     Amy V. Hollars, Judge**

---

**No. M2012-00603-COA-R3-CV - Filed December 21, 2012**

---

Divorce action in which Mother raises numerous issues, including the designation of Father as the primary residential parent, the parenting plan in which Mother's parenting time was limited to 120 days a year, child support, and the classification and division of marital property. Mother also challenges the trial court's decisions to admit the testimony of two witnesses and to exclude the testimony of two other witnesses. We have concluded that the trial court erred in excluding two of Mother's expert witnesses and in admitting testimony regarding child abuse allegations that should have been excluded based upon Tennessee Code Annotated § 37-1-409. Having considered the record, including the testimony of Mother's two experts and excluding the testimony that must be excluded pursuant to Tennessee Code Annotated § 37-1-409, we find the evidence does not preponderate against the trial court's designation of Father as the primary residential parent; however, the evidence does preponderate against the parenting schedule which greatly limits Mother's parenting time. We affirm the trial court's classification and division of the marital estate in all respects. Because we have concluded that the evidence preponderates against the parenting schedule, we remand this issue to the trial court to adopt a parenting schedule that affords Mother additional parenting time, although not equal parenting time, and to modify the child support award to comport with Mother's income and the new parenting schedule.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part, Reversed in part, Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Henry D. Fincher, Cookeville, Tennessee, for the appellant, Pennye Danielle Strickland.

Charlene Robin Vance, Watertown, Tennessee, for the appellee, Chris Eric Strickland

# OPINION

This appeal arises from a contentious divorce between Pennye Danielle Strickland ("Mother"), and Chris Eric Strickland ("Father"). The parties were married in May 2003. In May 2004, Mother gave birth to the parties' only child, Bryce Strickland. Mother had another child, Brett Cooper, from a previous relationship.

Father filed for divorce on August 10, 2008. At the time, Mother had removed herself and the minor child from the marital residence. Mother filed an Answer and Counter-Claim. A pendente lite hearing occurred and Mother was named the primary residential parent of Bryce and Father was ordered to pay child support. Thereafter, a protracted period of litigation ensued that lasted almost three and one-half years, until the trial occurred in January of 2012.

In the interim, Mother initiated a Chapter 7 bankruptcy proceeding and was discharged of all of her debts prior to the parties' divorce in 2012. Mother also began a relationship with another man, Michael Weston, during the pendency of this action, and Mother gave birth to her third child, Brock Michael Weston, in January 2010; Mr. Weston is the father of Brock Weston.

The divorce trial began on January 24, 2012, and lasted until January 27, 2012. During the trial, Mother stipulated to the grounds for divorce of adultery and inappropriate marital conduct. The testimony presented during the four-day trial focused on the parenting plan and specifically the comparative fitness of the parents, child support, and classification and division of the marital property. Numerous witnesses testified including the parties' seven-year-old child Bryce and Mother's fifteen-year-old child Brett from her previous marriage. Both parents testified and, over Mother's objections, the trial court permitted the testimony of Department of Children's Services worker Betsy Dunn, and Cookeville Police Department Sergeant Yvette Deming. Upon the objection of Father, the trial court excluded two expert witnesses called by Mother, Dr. Rodney Ellis, who performed a psychosocial evaluation of Mother, and Susan Freitag, the minor child's counselor. Mother made an offer of proof as to both witnesses' testimony, the transcript of which is in the record. On January 31, 2012, the parties reconvened before the trial court so that the court could announce its ruling.

Pursuant to the Final Order of Absolute Divorce, entered on February 14, 2012, Father was granted the divorce on the stipulated grounds. As to the parties' minor child, the trial court found that Father should be named the primary residential parent. The trial court found that Father was more capable of caring for the child financially, that Mother had a history of unstable relationships and volatile conduct, that there was evidence of Mother forcefully spanking her eldest child on one occasion, and that there was evidence Mother slapped the

minor child one time a few weeks prior to the trial. The trial court also considered the fact that Mother had been estranged from her eldest child for the last three years, while Father had maintained a relationship with his stepson. The trial court also found Mother's reporting of potential abuse by Father to DCS weighed against her. The trial court adopted a parenting plan proposed by Father in which Mother was given a total of 120 parenting days a year including parenting time every other weekend and on the Thursday immediately following her weekend of parenting time. Father was given 245 parenting days and sole decision-making authority over education, non-emergency healthcare, religious upbringing, and extracurricular activities. Mother was ordered to pay child support in the amount of $33.00 monthly, based upon the trial court's adoption of Father's proposed child support worksheet, which credited Mother with a monthly salary of $2,600 and Father with a monthly salary of $6,563.16.

In the classification and division of the marital estate, the trial court found that the property located at 1762 Philadelphia Road, Lebanon, Tennessee, was Father's separate property and the court found that Father held only a one-half interest in property he acquired during the pendency of the divorce located at 4531 Claude Loftis Road, Cookeville, Tennessee, and classified Father's one-half interest as marital property. The court found that Father's equity in that property was $9,190.00, and divided this amount equally between Mother and Father. The trial court awarded Father his vehicle, a 2005 Infinity G35, with a negative equity of $1,000, and awarded Mother the 2011 Nissan Quest van, which she jointly owned with Michael Weston. The Nissan Quest had an equity value of $6,000, which the court divided equally between Mother and Father. Because Mother had received a full discharge of her debts in the Chapter 7 bankruptcy proceeding during the pendency of the divorce, the trial court noted that Father was burdened with the entirety of the parties' unsecured debts, which included the Fifth Third installment loan for the Infinity vehicle, Capital One MasterCard account, Tractor Supply credit card, IRS debt, PHH mortgage (which was a deficiency on the parties' previous home), Southeast Financial Credit Union, Lowe's credit card, Home Depot credit card, GE Money Bank, John Deere loan, Beneficial line of credit, and Dell Financial.

The trial court found that each party would be responsible for their respective attorneys' fees noting that Mother did not have the ability to pay. Mother filed a timely appeal.

**ANALYSIS**

Mother raises fifteen separate issues on appeal; as for Father, he seeks to recover his attorney's fees and costs incurred on appeal. We shall address each issue in turn.

## I. EXCLUSION AND ADMISSION OF WITNESSES' TESTIMONY

Mother contends that the trial court erred in excluding the testimony of her two expert witnesses, Dr. Rodney Ellis and Counselor Susan Freitag. She also asserts the court erred in admitting the testimony of DCS worker Betsy Dunn and Cookeville Police Sergeant Yvette Deming on a report of child abuse, because the report and investigation were confidential under Tennessee Code Annotated § 37-1-409. Further, Mother asserts that these erroneous evidentiary decisions prejudiced her rights, particularly as it pertains to the court's decisions regarding the permanent parenting plan. Mother also asserts the trial court erred in qualifying Sheriff's Deputy Greg Cooper as an expert witness and permitting him to testify regarding the cause of bruising on their child. Mother also challenges the trial court's decision to permit her fifteen-year-old son and seven-year-old son to testify. We discuss each evidentiary issue in turn below.

### A.

The standard for reviewing a trial court's evidentiary decisions was set forth by this Court in *White v. Vanderbilt Univ.,* 21 S.W.3d 215 (Tenn. Ct. App.1999) as follows:

> The admission or exclusion of evidence is within the trial court's discretion. *See Seffernick v. Saint Thomas Hosp.,* 969 S.W.2d 391, 393 (Tenn.1998); *Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 442 (Tenn.1992). The discretionary nature of the decision does not shield it completely from appellate review but does result in subjecting it to less rigorous appellate scrutiny. *See Tennessee Dep't of Health v. Frisbee,* No. 01A01–9511–CH–00540, 1998 WL 4718, at *2 (Tenn. Ct. App. Jan. 9, 1998) (No Tenn. R. App. P. 11 application filed); *BIF v. Service Constr. Co.,* No. 87–136–II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed). Because, by their very nature, discretionary decisions involve a choice among acceptable alternatives, reviewing courts will not second-guess a trial court's exercise of its discretion simply because the trial court chose an alternative that the appellate courts would not have chosen. *See Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 708 (Tenn. Ct. App.1999).
>
> Discretionary decisions require conscientious judgment. *See BIF v. Service Constr. Co.,* 1988 WL 72409, at *2. They must take the applicable law into account and must also be consistent with the facts before the court. *See Overstreet v. Shoney's, Inc.,* 4 S.W.3d at 709. Appellate courts will set aside a discretionary decision only when the trial court has misconstrued or misapplied the controlling legal principles or has acted inconsistently with the

substantial weight of the evidence. *See Overstreet v. Shoney's, Inc.,* 4 S.W.3d at 709. Thus, a trial court's discretionary decision should be reviewed to determine: (1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives. *See BIF v. Service Constr. Co.,* 1988 WL 72409, at *3. Appellate courts should permit a discretionary decision to stand if reasonable judicial minds can differ concerning its soundness. *See Overstreet v. Shoney's, Inc.,* 4 S.W.3d at 709.

*White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222–23 (Tenn. Ct. App.1999).

B.
Exclusion of Mother's Expert Witnesses

Mother timely disclosed Dr. Rodney Ellis and Counselor Susan Freitag as experts to Father and provided their reports to Father. Thereafter, Father subpoenaed each expert for depositions. Both expert witnesses responded to Father's subpoena by submitting invoices for their professional time in advance of the scheduled date.

Dr. Rodney Ellis was served with his subpoena on January 9, 2012, for a deposition scheduled on January 16, 2012. On January 11, 2012, he faxed Father's counsel an invoice for his appearance at the deposition. Susan Freitag was served with a subpoena on January 5, 2012, for a deposition scheduled on January 16, 2012, and she provided an invoice to Father's counsel on January 10, 2012.[1] Father's counsel responded with letters to each expert stating that they were obligated to appear at the deposition, but did not offer to pay either expert witnesses' fee. Further, Father's counsel did not seek leave of the court to compel their depositions. Neither expert witness appeared at the scheduled deposition and Father took no further action to compel the depositions. When Mother's counsel tendered each of her expert witnesses to testify at trial Father objected, claiming unfair surprise, and the trial court excluded both expert witnesses upon the basis of surprise. Upon the exclusion of both witnesses by the trial court, Mother's counsel then made an offer of proof by questioning both expert witnesses; the transcript of their testimony was marked as an exhibit and is in the record before us, but was not admitted into evidence.

Tennessee Rule of Civil Procedure 26.02(4)(A)(ii) provides that a party may depose any party's expert witness who is expected to testify at trial. Further, Tennessee Rule of Civil

---

[1] We note that both experts were subpoenaed to appear for depositions at the exact same time, January 16, 2012, at 9:00 a.m.

Procedure 26.02(4)(C)(i) provides that the court *shall* require that the party seeking discovery to pay the expert a reasonable fee for time spent responding to discovery under subdivisions (4)(A)(ii) unless manifest injustice would result. In this case, Father presents no proof of a manifest injustice as the rule contemplates; further, Father sought no relief from the trial court to depose Mother's expert witnesses prior to trial.

To the contrary, upon receiving the invoices from the expert witnesses, Father responded with a letter erroneously informing the expert witnesses of the following: "Be advised, there is absolutely no provision within the Tennessee Rules of Civil Procedure which would permit a properly subpoenaed witness to solicit a fee in exchange for compliance with a properly Court issued subpoena." *See* Tennessee Rule of Civil Procedure 26.02(4)(C)(i). Father's counsel further responded to the invoices with the statement that "As counsel for the Plaintiff in the above matter, I have no inkling of what, if any, relevant or useful information you are prepared to share with the Court on behalf of the Defendant."

When objecting to the expert witnesses at trial, Father did not argue that the expert witnesses' fees were unreasonable nor did he seek leave of the trial court to compel their depositions. Instead, Father merely claimed "unfair surprise." On appeal, Father offers no explanation for his refusal to pay the fees of the expert witnesses. Ironically, Father asserts on appeal that the failure of the experts to appear for deposition denied him of the opportunity to pay the fees at the time of the scheduled deposition. We find this argument very disingenuous as the language from Father's counsel to Dr. Ellis and Susan Freitag made it clear that Father had no intention of paying Dr. Ellis or Susan Freitag for their time at the depositions as required by Tennessee Rule of Civil Procedure 26.02(4)(C)(i).

Based upon the foregoing facts, there is no basis upon which to conclude that Father was surprised, and certainly not unfairly surprised, when Mother's counsel called the two experts to testify at trial. Mother timely disclosed both expert witnesses and Father subpoenaed the witnesses. The expert witnesses responded by asking Father to remit payment of their professional fees, which is not only authorized by the rules but is required pursuant to Tennessee Rule of Civil Procedure 26.02(4)(C)(i) unless the court finds the requested fee is unreasonable or a manifest injustice would result by requiring Father to pay the fee. Father's response was a blatant refusal to pay for the expert witnesses' fees. As a result, the depositions were not taken by Father and the reason they were not taken is Father's refusal to pay their fees as required by the rules. Accordingly, we find no basis upon which to conclude that Father was unfairly surprised by the two expert witnesses and, thus, the trial court erred in excluding the testimony of Dr. Ellis and Susan Freitag on that basis.

Mother's counsel made an offer of proof and a verbatim transcript of their testimony is in the record. During the offer of proof, Father's attorney repeatedly objected to certifying

either as an expert witnesses. The trial judge was not present in the courtroom during the offer of proof; thus, the trial court did not rule upon Father's objections. On appeal, Father does not address whether or not these witnesses should be excluded as experts; no mention is made of this in Father's brief, which constitutes a waiver of these objections. Further, we find that both witnesses qualify as experts on the subjects of their testimony and find their expert testimony is admissible pursuant to Tennessee Rule of Evidence 701; accordingly, their testimony is admitted into evidence.

The foregoing notwithstanding, Father contends that excluding the testimony of Dr. Ellis and Ms. Freitag did not result in any prejudice to Mother. We must disagree with this contention. The offer of proof reveals that Dr. Ellis performed psychosocial evaluations of Mother and her boyfriend (the father of her third child) to address the trial court's often expressed concerns regarding their ability to parent. Dr. Ellis's testimony in this regard is favorable to Mother. Ms. Freitag was the counselor for the parties' minor child and she clearly possessed relevant information that should be considered regarding the state of mind of the child and the child's best interest as it pertained to the parenting plan and her testimony was also favorable to Mother. Further, the trial court's decision regarding the designation of the primary residential parent and the parenting schedule took such factors into consideration. Accordingly, we find that excluding the testimony of Dr. Ellis and Ms. Freitag resulted in prejudice to Mother, particularly as it pertained to the issue of the parenting plan and parenting time.[2]

## C.
### Admission of Testimony Regarding DCS Investigation of Child Abuse

As noted earlier, Mother asserts that the trial court erred in admitting the testimony of DCS worker Betsy Dunn and Cookeville Police Sergeant Yvette Deming on a report of child abuse, because the report and investigation were confidential under Tennessee Code Annotated § 37-1-409.

Betsy Dunn, an employee of the Department of Children's Services ("DCS"), investigated a report of alleged abuse by Father of the parties' minor child. Ms. Dunn was called as a witness at trial by Father to testify that Mother had "coached" the child regarding the report of abuse and Father contends the testimony was for the purpose of protecting the minor child from "coaching," which may constitute abuse. Mother contends that Ms. Dunn's

---

[2]Having admitted the expert testimony of Dr. Ellis and Ms. Freitag into evidence, later in this opinion we consider their testimony along with all other relevant testimony to determine whether the evidence preponderated against the trial court's designation of Father as the primary residential parent and the adoption of the parenting schedule.

testimony falls within the confidentiality provisions in Tennessee Code Annotated § 37-1-409 because Ms. Dunn's testimony provides details of the DCS investigation of the report of child abuse, which is inadmissible.

Tennessee Code Annotated § 37-1-409(a) provides that:

(1) Except as otherwise provided by this section and §§ 37-1-612 and 37-5-107, *reports of harm made under this part and the identity of the reporter are confidential*, except when the juvenile court in which the investigation report is filed, in its discretion, determines the testimony of the person reporting to be material to an indictment or conviction.[3]

(2)Except as may be ordered by the juvenile court as herein provided, the name of any person reporting child abuse shall not be released to any person, other than employees of the department or other child protection team members responsible for child protective services, the abuse registry, or the appropriate district attorney general upon subpoena of the Tennessee Bureau of Investigation, without the written consent of the person reporting. Such person's identity shall be irrelevant to any civil proceeding and shall, therefore, not be subject to disclosure by order of any court. This shall not prohibit the subpoenaing of a person reporting child abuse when deemed necessary by the district attorney general or the department to protect a child who is the subject of a report; provided, that the fact that such person made the report is not disclosed.

Tennessee Code Annotated § 37-1-409(d) states that "[t]he department may confirm whether a child abuse or neglect investigation has been commenced, *but may not divulge, except as permitted under this part, any details about the case, including, but not limited to, the name of the reporter, the alleged victim, or the alleged perpetrator*." An exception to confidentiality for disclosures made by DCS is contained within Tennessee Code Annotated § 37-1-612(h) for the purposes of protecting a child from child abuse or neglect or child sexual abuse.

Under the plain language of the statute, Mother is correct in stating that Ms. Dunn's testimony divulged details of the investigation, which is confidential and inadmissible under the mandates of Tennessee Code Annotated § 37-1-409. We also find no evidence to support Father's bare assertion that Mother's alleged coaching of the child was "child abuse" as

---

[3]Tennessee Code Annotated § 37-1-612 and Tennessee Code Annotated § 37-5-107 are not applicable in this circumstance.

contemplated in Tennessee Code Annotated § 37-1-612(h). The only "evidence" to support this assertion is the speculative remarks of Ms. Dunn who stated that she had a "concern" that there was a "possibility" that the child had been coached.

For the foregoing reasons, we find the trial court erred in admitting into evidence the testimony of Ms. Dunn; accordingly, her testimony is excluded and shall not be considered.

Mother also insists the trial court erred in admitting the testimony of Cookeville Police Sergeant Yvette Deming who assisted Ms. Dunn in the investigation stemming from the report of child abuse. Mother contends that the trial court erred in admitting Sgt. Deming's testimony because Sgt. Deming was prevented from testifying or releasing any information by Tennessee Code Annotated § 37-1-409(f) which provides that:

> (f) Except as specifically provided in this chapter, nothing in this chapter shall prevent the department from sharing information with the district attorney general and law enforcement personnel for the purpose of cooperating with a law enforcement investigation. Information from departmental records that is shared with the district attorney general or law enforcement by the department shall remain confidential to the same extent that information not shared with the district attorney general and law enforcement is confidential. Unless otherwise ordered by a court, or to the extent that such information is used for criminal prosecution, or to the extent required under the Tennessee rules of criminal procedure after criminal charges have been filed, any portion of shared information that does not become part of a court record shall remain confidential to the same extent as information not shared by the department remains confidential.

Mother further argues that Sgt. Deming's testimony would not even have been permissible under the exception provided in Tennessee Code Annotated § 37-1-612(h) because it only applies to employees of DCS. We agree; this is because Sgt. Deming's testimony was confidential under Tennessee Code Annotated § 37-1-409 and, therefore, should have been excluded.

### C.
### Expert Testimony of Deputy Sheriff Greg Cooper

Mother contends the trial court erroneously qualified former Deputy Sheriff Greg Cooper as an expert witness in bruising. Her assertion is two-fold. One, Deputy Cooper was not identified before trial as an expert witness as required by Tennessee Rule of Civil Procedure 26.02(4)(A)(i). Second, there is no basis upon which to find that Mr. Cooper has

any expertise on the subject of his "expert" testimony.

Former Deputy Sheriff Greg Cooper, who is also the father of Mother's first child, Brett, was called to testify by the guardian ad litem concerning Mother's relationship with their son Brett Cooper. During his testimony, Mr. Cooper recalled an incident that occurred many years ago. He stated that Brett had bruises on his legs after visiting his Mother. Mr. Cooper testified that, in his opinion, the bruises appeared to be caused by a belt mark. Mr. Cooper based his opinion on his past experience in child abuse investigation while working for the Sheriff's Department. Mother objected on the grounds that Mr. Cooper was not qualified to testify to the cause of the bruises. The trial judge overruled Mother's objection on the grounds that Mr. Cooper was offering his own lay opinion. We find the trial court did not abuse its discretion in permitting Mr. Cooper to state his lay opinion on the subject. Further, the trial court did not qualify Mr. Cooper as an expert, thus, that objection is not relevant.

D.
Testimony of Two Minor Children

Mother argues that the trial court erred in permitting her sons Brett Cooper and Bryce Strickland to testify at trial.

Brett Cooper is Mother's son from her previous relationship with Greg Cooper. At the time of trial, Brett was 15 years old. Mother contends Brett's testimony was not relevant to the issue of the custody of Bryce. We disagree.

Tennessee Rule of Evidence 401 provides that evidence is relevant if is has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The determination of relevancy is left to the discretion of the trial court, and this court will not overturn a trial court's determination in this regard in the absence of an abuse of discretion. *State v. Forbes*, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995). In this case, the trial court was determining whether Mother or Father should be named the primary residential parent of the parties' minor child and the testimony of a child of Mother and their relationship can be relevant to Mother's parenting skills. Thus, we find no abuse of discretion in permitting Brett to testify concerning his relations with Mother and her parenting of him.

Mother also objected to the trial court permitting Bryce, the parties' seven-year-old child to testify. Although the trial court must be cautious in deciding whether to allow a child as young as seven years old to testify, in this case we find the court did not abuse its discretion in permitting Bryce to testify. His brief testimony was limited to the subject of

parenting and, thus, was relevant to the trial court's decision concerning the parenting plan. Further, under Tennessee Rule of Evidence 601, all witnesses are presumed competent unless otherwise provided by the Rules of Evidence or statute. "Under T.R.E. 601 . . . no one is automatically barred from testifying simply because of age or mental status."*State v. Caughron*, 855 S.W.2d 526, 537–538 (Tenn.1993) (footnote omitted). "So long as a witness is of sufficient capacity to understand the obligation of an oath or affirmation, and some rule or statute does not provide otherwise, the witness is competent." *Id*. Our courts have held that age alone is an insufficient basis to conclude a child is not competent to testify as a witness at trial. *See Pippin v. Pippin*, 277 S.W.3d 398, 403 (Tenn. Ct. App. 2008).

In this case, while Bryce initially indicated that he did not know the difference between a truth and a lie, which could preclude him from testifying, upon further questioning, it became clear that Bryce was aware of the difference between the truth and a lie, stating that telling a lie was a "bad thing." Determining whether a minor child knows the difference between the truth and a lie has been held to establish competency to testify. *See Franks v. State*, 213 S.W.2d 105, 107 (Tenn. 1948); *State v. Braggs*, 604 S.W.2d 883, 885-86 (Tenn. Crim. App. 1980). Based upon the above facts, the trial court did not abuse its discretion in permitting Bryce Strickland to testify in a limited fashion.

E.
Summation of Our Evidentiary Rulings

To summarize our rulings concerning Mother's numerous evidentiary issues, we have excluded the testimony of DCS worker Betsy Dunn and Cookeville Police Sergeant Yvette Deming concerning the investigation of a report of alleged child abuse because the report and investigation are confidential under Tennessee Code Annotated § 37-1-409. We have admitted into evidence the expert testimony of Dr. Ellis and Susan Freitag and, therefore, we shall consider their testimony along with all other evidence as it pertains to the relevant issues on appeal. Finally, we find no error with the trial court admitting into evidence the lay opinion testimony of Greg Cooper and the court's decision permitting Brett Cooper and Bryce Strickland to testify. Thus, their testimony shall also be considered as it pertains to the relevant issues on appeal.

**II. Guardian ad Litem**

Mother raises several issues relating to the guardian ad litem. First, Mother contends that the trial court erred in failing to discharge the guardian ad litem in the action when "her involvement had become both superfluous and biased." She also argues that trial court erred

in assessing the guardian ad litem's fees against Mother and Father equally.[4]

We find the trial court did not err in denying Mother's request to discharge the guardian ad litem. As Father points out, the parties agreed to the appointment of a guardian ad litem in this action; however, Mother argues that Tennessee Supreme Court Rule 40A changed during the course of the proceedings and for that reason the guardian ad litem should have been discharged. We find no error in refusing to discharge the guardian ad litem late in the proceedings for the parties agreed to the appointment of the guardian ad litem and she had been involved in a constructive fashion during the protracted divorce proceedings. We do, however, agree with Mother that Rule 40(A) must be complied with when this matter is remanded to the trial court.

As for the costs, Tennessee Rule of Civil Procedure 54.04(2) provides that guardian ad litem costs are recoverable as discretionary costs and we find no error with the trial court assessing the fees against the parties equally.

### III. Request for Mediation

Mother argues that the trial court erred in denying her request for mediation. We disagree. The request for mediation initially was made by Father in a motion for scheduling order filed on January 31, 2011; however, the parties never commenced mediation. Mother's request for mediation did not come until December 29, 2011, three weeks before trial. Although Tennessee Code Annotated § 36-4-131(a) requires mediation in a proceeding for divorce or separate maintenance, it also provides for exceptions codified in subsection (b). These exceptions include when "[t]he court finds a substantial likelihood that mediation will result in an impasse" or "for other cause found sufficient by the court." Tenn. Code Ann. § 36-4-131(b). In this case, the trial court denied Mother's request for mediation upon the finding "that mediation would not be productive in this case due to the Parties' vitriolic and corrosive interaction through the history of this case, and the short amount of time before trial." We find no error with this decision.

### IV. The Primary Residential Parent and the Parenting Schedule

Mother argues that the evidence preponderates against the trial court's designation of Father as the primary residential parent and the adoption of the parenting schedule proposed

---

[4]Mother also requests this court hold that guardian ad litems are subject to all of the requirements of an attorney representing a "party" in litigation including answering discovery in accordance with the Tennessee Rules of Civil Procedure. Finding this is not an issue properly before the court, but merely a request for an advisory opinion, we decline the opportunity to comment.

by Father, which greatly limited Mother's parenting time.

This court reviews decisions in divorce cases de novo with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Nichols v. Nichols*, 792 S.W.2d 713, 716 (Tenn. 1990). Moreover, appellate courts are reluctant to second-guess a trial court's determination regarding parenting schedules.[5] *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). "Trial courts have broad discretion in devising permanent parenting plans and designating the primary residential parent. In reaching such decisions, the courts should consider the unique circumstances of each case." *Burton v. Burton*, No. E2007-02904-COA-R3-CV, 2009 WL 302301, at *2 (Tenn. Ct. App. Feb. 9, 2009) (citing *Parker*, 986 S.W.2d at 563); *see also Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Nelson*, 66 S.W.3d at 901 (citing *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997)).

Trial courts have broad discretion to fashion parenting plans that best suit the unique circumstances of each case. *See Parker*, 986 S.W.2d at 563. Furthermore, it is not the role of the appellate courts to "tweak [parenting plans] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001).

Decisions regarding parenting schedules often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings. *Adelsperger*, 970 S.W.2d at 485. Thus, a trial court's decision regarding a permanent parenting plan will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Eldridge*, 42 S.W.3d at 88.

A.
Factors for Determining Primary Residential Parent

"There are currently two different statutes setting out non-exclusive lists of factors for the trial court to apply to help it reach the goal of determining a child's best interest." *Thompson v. Thompson*, No. M2011-02438-COA-R3CV, 2012 WL 5266319, at *6 (Tenn. Ct. App. Oct. 24, 2012). Tennessee Code Annotated § 36-6-106, which applies to "cases requiring the court to make a custody determination" states in making this determination the

_____

[5]Older decisions from our courts refer to custody or visitation agreements, however, we now refer to such arrangements as parenting plans or parenting schedules; the cases cited, however, remain on point for the substantive law.

-13-

court "shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in subdivisions (a)(1)-(10), the location of the residences of the parents, the child's need for stability and all other relevant factors." Tenn. Code Ann. § 36-6-106(a). "Accordingly, Tennessee courts must now fashion custody arrangements so as to give each parent the maximum amount of time possible with the child, in accordance with the child's best interests." *Rountree v. Rountree*, 369 S.W.3d 122, 129 (Tenn. Ct. App. 2012), perm. app. denied (May 16, 2012) (footnote omitted). The other statute, Tennessee Code Annotated § 36-6-404, requires that a permanent parenting plan be incorporated into "any final decree or decree of modification in an action for absolute divorce, legal separation, annulment, or separate maintenance involving a minor child." The statute further mandates that "a parenting plan must include a residential schedule, which designates in which parent's home the child will reside on different days, and the court must designate a 'primary residential parent.'" *Thompson*, 2012 WL 5266319, at *6 (quoting Tenn. Code Ann. § 36-6-404(b)). In determining the residential schedule, the court is to consider a list of factors set forth in Tennessee Code Annotated § 36–6–404(b).

In this action, the trial court applied the factors in Tennessee Code Annotated § 36-6-106(a), which apply to custody determinations. In *Thompson*, the trial court also applied the factors set forth in § 36-6-106(a). *Thompson*, 2012 WL 5266319, at *6. This court determined that although the parenting plan statutes were applicable, "the legislature's list of factors at Tennessee Code Annotated § 36-6-404(b) for the court to consider in determining a parenting plan and residential schedule are substantially similar to the factors set out in Tennessee Code Annotated § 36-6-106(a), and both allow for consideration of any other factors the court deems relevant." *Id*. Thus, the court determined that "[i]n this case, as in most cases, the analysis and the result would be the same regardless of which set of factors is applied." *Id*. We agree; thus we will analyze this issue under the factors applied by the trial court, those set forth in Tennessee Code Annotated § 36-6-106(a).[6]

The factors in Tennessee Code Annotated § 36-6-106(a) are:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;

---

[6]In its ruling, the trial court cited to one factor set forth in Tennessee Code Annotated § 36-6-404(b)(1): "the parent's ability to instruct, inspire and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult which incorporates the ability of a parent to be a moral guide, to provide instruction and guidance for the child." The trial court found that this factor weighed against Mother, whom the trial court found was untruthful to the court and exposed the child to extramarital relations, which weighed heavily against her ability to act as a moral guide for the child.

(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that, where there is a finding, under subdivision (a)(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a nonperpetrating parent or caregiver has relocated in order to flee the perpetrating parent, that the relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents or caregivers;

(5) The mental and physical health of the parents or caregivers;

(6) The home, school and community record of the child;

(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that, where there are allegations that one (1) parent has committed child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected to the evidence. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order.

With regard to love and affection between the child and each parent, the trial court found the child had strong emotional ties to both Mother and Father. The trial court found that the factor of the extent to which a parent had been the primary caregiver weighed in favor of neither parent. The trial court based this upon the finding that while Mother was the primary caregiver thus far in the child's life, Father provided "a great deal of hands on care" for the child early in life and was more financially stable than Mother.

As for the factor of stability of each family unit, the trial court found that while Mother provided proof of a current stable three-year relationship with Mr. Weston, the court was troubled by her history of unstable relationships especially her estrangement from her eldest child, Brett. The court found favorable Father's continued relationship with Mother's oldest child and his continued concern that Brett and Bryce maintain a good relationship.

The trial court found that the factor of mental and physical health of the parents weighed against Mother. The trial court was concerned with the "volatile conduct" of Mother toward Mr. Weston's ex-wife and Father's roommate. The court noted while there was no medical proof regarding either parent's mental or physical health, Mother's conduct raised a "red flag" in the court's mind. The court found that the child was well-adjusted and doing well. However, the court also found that Mother's conduct in the one testified instance of slapping him in the face and using deratogatory language about Father was emotionally abusive and thus weighed against Mother.

The court found that the factor of a parent's past and potential for future performance of parenting responsibilities weighed against Mother based upon Mother's past parenting and estrangement from her oldest child. The trial court also found that Mr. Weston's lack of candor regarding where he lived prior to October of 2011 weighed against Mother under the factor of the character and behavior of any other person who resides in the home or frequents the home of the parent or caregiver.

The factors that the trial court found to weigh most heavily against Mother were the history of unstable relationships, her poor relationship with her eldest child, and the report of child abuse made against Father. As we discussed previously in this opinion, the testimony of Sgt. Deming and Ms. Dunn of DCS should have been excluded and thus any findings related to their testimony should not have weighed into consideration. Further, we held that the trial court erroneously excluded the testimony of Susan Freitag and Dr. Ellis. The testimony of Ms. Freitag and Dr. Ellis is relevant to the factors at issue and, in part, directly addressed concerns raised by the trial court in a manner favorable to Mother.

Susan Freitag, a counselor with Personal Growth and Learning Center, has an undergraduate degree in psychology and a master's degree in education, psychology, and counselor education. She testified that she has met with Bryce six times and discussed his emotional state, his living situation, and his feelings and based upon her interactions with Bryce, it was her opinion that Bryce was a well-adjusted and happy child. She testified that she has found nothing to concern her that he is abused or fears either parent.

Dr. Rodney Ellis has a master of science in social work and is a licensed clinical social worker and serves as a therapist at Personal Growth and Learning Center and a mental health therapist and professor at the University of Tennessee in the College of Social Work. Dr. Ellis performed psychological evaluations on both Mother and Mr. Weston. The goals of his evaluation with Mother were to determine if there were any psychological conditions that would interfere with her ability to function as a parent and to determine the social conditions surrounding Mother and Mr. Weston's relationship to evaluate their ability to parent or co-parent Bryce. Dr. Ellis testified that Mother was a safe parent and that he did not identify any psychological or social conditions that would hinder her parenting abilities.[7] Dr. Ellis also testified that he evaluated Mr. Weston and found that he was an emotionally well-balanced individual and saw no evidence of any psychological issues that would inhibit his ability to function as an effective co-parent. Further, Dr. Ellis testified that he found many strengths in Mr. Weston that would allow him to function effectively.

Following a thorough review of the evidence properly admitted, including the expert testimony of Ms. Freitag and Dr. Ellis, we have determined that the evidence does not preponderate against the trial court's designation of Father as the primary residential parent. Even with the inclusion of the testimony of Dr. Ellis and Ms. Freitag and the exclusion of the testimony relating to the report of child abuse, applying the factors set forth in Tennessee Code Annotated § 36-6-106(a) the trial court did not err in designating Father as the primary

---

[7]We note that it appears from Dr. Ellis's testimony that Mother was not entirely honest about her relationship with her oldest son, Brett. Dr. Ellis stated this would cause him to re-evaluate a portion of his report.

residential parent. The preponderance of the evidence demonstrates that Father has been more stable and is better equipped presently to act as the primary residential parent; therefore, we affirm the trial court in this regard. We also affirm the trial court's decision to make the Father the primary decision-maker regarding the minor child. This is a decision firmly within the trial court's discretion and considering the contentiousness of the divorce and the relationship between the parties, we affirm the trial court.

As for the parenting schedule, however, the evidence preponderates against a parenting plan that limits Mother's parenting time to 120 days a year. We have reached this conclusion based on several factors and facts. One, we find it significant that Mother was the primary residential parent during the three and a half years the divorce action was pending and during that time Bryce developed a close relationship with his younger brother and Bryce was well-adjusted and happy with both parents, as Susan Freitag stated. Accordingly, Ms. Freitag's testimony would have alleviated some of the trial court's concerns about Mother's parenting skills. We also note that there was significant corroborating testimony by other witnesses that Bryce was happy and well-adjusted during the three and one-half years he was primarily with Mother. Friends and former teachers testified that they witnessed Bryce during the pendency of the divorce and he did not show any signs of distress at a time when he was under Mother's primary care. In adopting a parenting schedule, the court is to consider the best interests of the child and we have concluded that the evidence preponderates in favor of a parenting schedule that does not greatly minimize the parenting time of one parent, either parent. Further, limiting Mother's parenting time is also significant because that parenting schedule dramatically reduces the amount of time Bryce will have with his younger brother, which we believe could negatively, and unnecessarily, impact that relationship.

As this court has recognized on several occasions, a parenting schedule that separates siblings is discouraged; however, the best interests of the child should be the foremost consideration. *See Rice v. Rice*, 983 S.W.2d 680, (Tenn. Ct. App. 1998) (citing *Baggett v. Baggett*, 512 S.W.2d 292, 293-94 (Tenn. Ct. App. 1973)). The evidence in this case does not preponderate against the trial court's finding that Father should be the primary residential parent and it does not preponderate against the finding that Father should have more parenting time than Mother; however, the evidence does preponderate against restricting Mother's parenting time to 120 days a year. This is especially true realizing the close proximity of the parent's respective homes and the testimony of Dr. Ellis and Ms. Freitag that addresses many of the trial court's concerns.

For the foregoing reasons, we affirm the designation of Father as the primary residential parent with sole authority to make the decisions outlined in the parenting plan; however, we reverse the decision concerning the parenting schedule and remand this issue for the trial court to adopt a parenting schedule that affords Mother more parenting time,

although not as much as Father, considering that Tennessee Code Annotated § 36-6-106(a) favors a parenting schedule that gives each parent the maximum amount of time in accordance with the child's best interests. Once the trial court has approved a revised parenting schedule, the trial court shall also modify the child support.

## V. Child Support

Mother contends that the trial court erred in setting her child support obligation. Mother is (or was) licensed to sell insurance and has previously had a higher salary. The proof at trial was that Mother earned $602 a month working part-time as a customer service representative for an insurance agency. The trial court, however, relied upon the Child Support Worksheet submitted by Father which stated that Mother's income was $2,600 a month. This income, however, is based upon income Mother received from a job that she held three years prior to trial and which was prior to the birth of her youngest child. There is no evidence in the record that Mother's current income is $2,600 a month and the trial court made no finding that Mother was intentionally underemployed and the court made no imputed income finding. We have concluded that the evidence preponderates against the setting of Mother's child support obligation based upon a current income of $2,600; thus, that determination is reversed.

We have remanded this action back to the trial court to establish a revised parenting schedule, which decision will also require a redetermination of child support. Thus, on remand, the trial court should also make a new determination of Mother's current income or ability to earn income and set the child support obligation in accordance with the Child Support Regulations.

## VI. Division of Marital Property

Mother raises three issues related to the marital property. First, Mother contends that the trial court erred in finding that only one-half of property on Claude Loftis Road in Cookeville, Tennessee was marital property. Second, Mother argues that the trial court erred in finding that the property at Philadelphia Road located in Wilson County was Father's separate property. Third, Mother contends that the trial court incorrectly characterized certain debts, which had been voided by Mother's bankruptcy during the pendency of the divorce, as "marital debts."

The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001). Tennessee is a "dual property" state, thus, property cannot be included in the marital estate unless it is deemed "marital property." *Smith v. Smith*, 93 S.W.3d 871, 875-76 (Tenn. Ct.

App. 2002). The definition of "marital property" is found in Tennessee Code Annotated § 36-4-121(b)(1)(A). "Separate property," as that term is defined in Tennessee Code Annotated § 36-4-121(b)(2)(A)-(F), is not marital property. Therefore, separate property should not be included in the marital estate. *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 246 (Tenn. 2009). Property classification is a question of fact. *Bilyeau v. Bilyeau*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005). Thus, we review the trial court's classification using the familiar standard of review in Tennessee Rule of Appellate Procedure 13(d).

Once property has been classified as marital property, the court should place a reasonable value on property that is subject to division. *Edmisten v. Edmisten*, No. M2001-00081-COA-R3-CV, 2003 WL 21077990, at *11 (Tenn. Ct. App. May 13, 2003). The parties have the burden to provide competent valuation evidence. *Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). When valuation evidence is conflicting, the court may place a value on the property that is within the range of the values presented. *See Watters v. Watters*, 959 S.W.2d 585, 589 (Tenn. Ct. App. 1997). Decisions regarding the value of marital property are questions of fact; thus, they are not second-guessed on appeal unless they are not supported by a preponderance of the evidence. *Kinard*, 986 S.W.2d at 231.

Once the marital property has been valued, the trial court is to divide the marital property in an equitable manner. Tenn. Code Ann. § 36-4-121(a)(1); *Miller*, 81 S.W.3d at 775. A division of marital property in an equitable manner does not require that the property be divided equally. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002). "Dividing a marital estate is not a mechanical process but rather is guided by considering the factors in Tenn. Code Ann. § 36-4-121(c)." *Kinard*, 986 S.W.2d at 230. "Trial courts have wide latitude in fashioning an equitable division of marital property." *Id*. Therefore, this court accords great weight to the trial court's division of marital property. *Wilson v. Moore*, 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996). Thus, we defer to the trial court's division of the marital estate unless it is inconsistent with the factors in Tennessee Code Annotated § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

The difficulty in classifying property as marital property or separate property may be exacerbated when the property undergoes a metamorphosis during the marriage or when the nonowner spouse contributes substantially to the preservation or appreciation of the separate property. This is because marital property can become separate property when a spouse gives it to the other spouse, *Kinard v. Kinard*, 986 S.W.2d 220, 232 (Tenn. Ct. App. 1998). Alternatively, separate property can become marital property when its original owner commingles it with marital property. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002). To complicate matters, the increase in the value of separate property, and the

-20-

income from separate property, may be considered marital property if the nonowner spouse contributed substantially to the separate property's preservation and appreciation. Tenn. Code Ann. § 36-4-121(b)(1)(B); *Cohen v. Cohen*, 937 S.W.2d 823, 832-33 (Tenn. 1996).

A.
Claude Loftis Road Property

Mother contends the residence at Claude Loftis Road in Cookeville, Tennessee was marital property; the trial court found that Father owned one-half of the property and that his friend Bobby Nickens owned one-half. Thus, only one-half of the equity in the property was marital property.

Father and Mr. Nickens purchased the property together with Mr. Nickens paying the ten-percent down payment at closing. The men testified that this down payment constituted prepaid rent on the residence and that, thereafter, Father paid the rent. They admitted that Father's name was the only name on the deed, however, the preponderance of the evidence demonstrates that Father owned the property and Mr. Nickens shared an interest in the property and the trial court properly included only Father's interest in the property in the marital property division. We find no error with this determination.

B.
Philadelphia Road Property

Mother contends the trial court erred in finding the property on Philadelphia Road in Wilson County was Father's separate property. She contends it transmuted into marital property.

The trial court found that Father owned the property prior to his marriage to Mother. The court also found that the property was never used as a marital residence, that there was no proof that Mother contributed to the maintenance or the upkeep of the property, and that Father specifically refused to grant Mother jointly-titled ownership in the property during the marriage. The trial court further found that the refinancing of the property, in which Mother's name was added to the note, was not to improve the land but to collaterize other additional marital debts. The evidence also demonstrated that Father's brother had lived in the property almost the entire marriage and paid the mortgage on the property.

Separate property becomes marital property when the separate property is treated in a way to give evidence of an intention that it become marital property. *Langschmidt*, 81 S.W.3d at 747. In *Fox v. Fox*, this court recognized four factors that are commonly used to determine if separate property became marital property: (1) the use of the property as a

marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property. *Fox*, No. M2004-02616-COA-R3CV, 2006 WL 2535407, at \*5 (Tenn. Ct. App. Sept. 1, 2006) (citing 3 John Tingely & Nicholas B. Svalina, Marital Property Law § 43:11, at 43-119 to -122 (rev. second ed. 2006)).

We have determined that the evidence does not preponderate against the trial court's finding that this property remained Father's separate property and therefore was properly excluded from the marital property division. The evidence in the record indicates that Father was insistent that the property be kept separately titled in his name and the property was never treated as a marital residence. While Mother's name was added to the note, that is but one factor, and the ultimate test is how the property was treated by the parties. *See Langschmidt*, 81 S.W.3d at 747; *Fox*, 2006 WL 2534507, at \*5.

### C.
### Mother's Discharge in Bankruptcy

Lastly, Mother contends that the trial court incorrectly characterized debts which had been forgiven in Mother's bankruptcy discharge as "marital debts." She contends that this characterization reduced her share of the marital estate and indirectly reimposed liability for those debts. More specifically, Mother argues that the discharged debts are by definition separate debts and, thus, should not have been included in the marital property division; however, she cites no authority to support this assertion.[8]

"'Marital debts' are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing."*Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003). In its allocation of the marital debt, the trial court found that Mother received a full discharge of her financial obligations in her Chapter 7 bankruptcy, including her joint obligations with Father. The court also found that the entire burden of the remaining joint obligations, the marital debt, shifted to Father. Nevertheless, these debts were marital debts when they were incurred and Mother has failed to cite to any authority to support her assertion that her discharge made these former marital debts Father's sole debts and, therefore, his "sole debts" should not have been considered in the marital property division. Applying equitable principles as the trial court did, we respectfully disagree with Mother's argument. Whether or not Mother is liable for these debts does not change the fact that these were marital debts when they were incurred; thus, the trial court correctly considered them as marital debts in making an equitable distribution of the marital estate. To be blunt, it

---

[8]The only cases cited by Mother are not on point as they analyze whether marital debts allocated in a final decree or order are dischargeable under federal bankruptcy law.

would be most inequitable for the debt to be characterized or applied in any other manner. Thus, we affirm the trial court's division of marital property in all respects.

## VII. Attorney's Fees

Father seeks to recover his reasonable and necessary attorney's fees and costs incurred on appeal.

"Whether to award attorney's fees on appeal is a matter within the sole discretion of this Court." *Hill v. Hill,* No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007) (citing *Archer v. Archer,* 907 S.W.2d 412, 419 (Tenn. Ct. App. 1995)). In determining whether an award is appropriate, we take into consideration "the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *Id.* at *6 (citing *Dulin v. Dulin,* No. W2001-02969-COA-R3-CV, 2003 WL 22071454, at *10 (Tenn. Ct. App. Sept. 3, 2003)).

Husband sought to recover his attorney's fees incurred in the trial court. The trial court denied that request, finding that Mother did not have the ability to pay and that Father is more stable financially; therefore, the trial court ordered each party pay his or her respective fees and costs. The record before us supports the trial court's findings. Accordingly, each party shall be responsible for their respective attorney's fees and costs incurred on appeal.

## In Conclusion

The judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE